IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DERRICK T. CALHOUN          :
(AIS# 214085),              :
                            :
        Plaintiff,          :
                            :
vs.                         :          CIVIL ACTION NO. 13-0323-CG-N
                            :
CYNTHIA STEWART, *et al*.,   :
                            :
        Defendants.         :

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* filed a complaint under 42 U.S.C. § 1983.  Currently pending are the Special Reports filed by Defendants, Cynthia Stewart, Walter Myers, Derrick Lee, Christopher White, and Anthony Lambert (Docs. 35, 52, 67), which have been converted to a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 by order of the undersigned (Doc. 69).  Plaintiff has filed a response in opposition (Doc. 72) to the motion.  The motion for summary judgment is now under submission and ripe for adjudication.

Under SD ALA Local Rule 72.2(c)(4), this matter has been referred to the undersigned United States Magistrate Judge for submission of a recommendation as to the appropriate disposition, in accordance with 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1).  For the reasons stated below, it is recommended that the motion for summary judgment of Defendants be granted and that Plaintiff's action against these Defendants be dismissed with prejudice.

I.     SUMMARY OF ALLEGATIONS[1]

Plaintiff Calhoun is currently within the custody of the Alabama Department of Corrections serving two consecutive life sentences for first-degree robbery and murder. (Doc. 7 at 6; Doc. 35-1).  This action arose from two assaults that occurred while he was incarcerated at G.K. Fountain Correctional Facility ("Fountain") in 2012.[2]

The first incident complained of occurred on September 23, 2012, while Calhoun was housed in L-side of the segregated housing unit. (Doc. 7 at 4).[3]  On the evening of September 23, Defendants Officer White and Officer Lee were maintaining the segregation unit where Calhoun was housed in tier-2.  (Doc. 7 at 15).  Defendant White was stationed in the lobby of the unit and responsible for "rolling the doors" for Defendant Lee, who was showering the inmates.  (Doc. 7 at 15).  Defendant Lee properly escorted Calhoun to the shower located approximately three feet from the entrance to tier 2.  (Doc. 7 at 16; Doc. 35-4 at 2).  After his shower, Defendant Lee handcuffed Calhoun to the rear and began escorting him back to his cell when Calhoun was assaulted by inmate Devin Hill.  (Doc. 7 at 16).  Plaintiff claims inmate Hill was a tier 1 inmate who wrongfully gained access and entered tier 2 and "brutally and savagely" attacked him causing injures to his back, arm, legs, and jaw.  (Doc. 7 at 17, 19).  Defendants Lee and

---

[1] The undersigned has made her "determination of facts" by "review[ing] the record, and all its inferences, in the light most favorable to [Plaintiff Calhoun,] the nonmoving party." *E.g., Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997).

[2] Since the filing of this lawsuit, Plaintiff Calhoun has been transferred to Bullock Correctional Facility in Union Springs, Alabama.  (Doc. 73).

[3] L-side is comprised of two tiers: Tier 1 houses inmates placed in the segregation unit due to violent behavior, and Tier 2 holds inmates in segregation for administrative reasons or infractions; the two tiers are separated by a locked gate.  (Doc. 7 at 15).

White intervened and inmates Calhoun and Hill were returned to their respective cells. (Doc. 7 at 18).

Following the incident, Plaintiff Calhoun was examined in the healthcare unit for injuries. The medical records reflect that the right side of Calhoun's jaw was swollen and he had scratches or abrasions on his right side, right back, right elbow, and right knee. (Doc. 35-5 at 8). The wounds were cleaned and antibiotic ointment was provided. (*Id*.). The record also confirms Calhoun's claim that inmate Hill suffered no injuries due to the assault. (Doc. 35-2 at 7). The day after the assault, Calhoun wrote letters to Warden Stewart and Warden Myers complaining that a tier 1 inmate gained access to tier 2 and assaulted him. (Doc. 1 at 17-18). Calhoun expressed a general  "fear for [his] life" and requested to speak to the wardens and to have the incident investigated because he had "been did wrong."  (*Id*.). It appears from the record that while Calhoun never met with either warden, inmate Hill subsequently received a disciplinary charge for the assault, to which he pled guilty.[4] (Doc. 35-5 at 2-4).

---

[4]     Plaintiff Calhoun alleges that a few days after the incident Defendant Lee told Calhoun that inmate Hill paid Defendant Lee to allow him to attack Calhoun and stated that inmate Hill would not receive a write-up.  (Doc. 7 at 19).  However, the record evidences that Defendant Lee filed a disciplinary report against inmate Devin Hill on September 24, 2012, for assaulting Calhoun on September 23, 2012.  (Doc. 35-5 at 2-4). The report states, "Correctional Sergeant Derrick Lee did observe inmate Devin Hill B/209770 run onto Tier #2 and bumped into inmate Derrick Calhoun B/214085 from the back causing inmate Calhoun to fall to the floor."  (*Id*. at 2).  Inmate Hill pleaded guilty to the charge and received 21 days disciplinary segregation, 21 days loss of phone, store, and visitation privileges for the incident.  (*Id*. at 3-4).

        Additionally, Calhoun alleges that Defendant White received a "write-up" for allowing inmate Hill to be out of his cell and then subsequently threatened "to teach [Calhoun's] ass a lesson" for being written up.  (Doc. 7 at 19).  Although Plaintiff did not specifically allege a retaliation claim against Defendant White, the complaint suggests such.  Out of an abundance of caution, the Court will briefly discuss the possible retaliation claim against Defendant White.  *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ("A document filed *pro se* is to be liberally

The second incident alleged in the complaint is one of excessive force by Defendant Officer Lambert.  According to Calhoun, on October 5, 2012, Defendant Lambert, without justification or cause, approached his segregation cell and asked him to "cuff up."  (Doc. 7 at 21).  Calhoun asserts Defendant Lambert then cuffed his hands to the front of his body, escorted him to the lobby, and questioned him about possessing a cell phone belonging to inmate Hill.  (*Id*.).  Calhoun denied possessing the phone and claims Defendant Lambert subsequently threatened him with physical harm[5] and proceeded to hit him in the jaw, run him into the walls, slam him into the floor, punch and kick him, and drag him on the floor.  (*Id*. at 22-23).  Lastly, Calhoun alleges that Defendant Lambert placed him in a "headlock sleeper hold" and choked him unconscious; all while inmate Devin Hill watched from outside the segregation unit.  (*Id*. at 23).  The complaint charges that Officer Boggan and Officer Walker witnessed

---

construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers...") (citation and quotations omitted)).

To state a First Amendment claim for retaliation "cognizable under § 1983, a prisoner must demonstrate that (i) he engaged in a constitutionally protected activity, (ii) he suffered adverse treatment simultaneously with or subsequent to such activity, and (iii) a causal connection existed between the protected activity and the adverse action." *Flynn v. Scott*, 2:04-CV-239-DRB, 2006 U.S. Dist. LEXIS 28280, 2006 WL 1236718, *5 (M.D. Ala. 2006) (*citing Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600-01 (11th Cir. 1986); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003)).  Calhoun, however, fails to carry his burden of establishing a *prima facie* case of retaliation, as he alleges no adverse action was taken against him.  *Hempstead v. Carter*, No. 5:06CV68/MCR/EMT, 2006 U.S. Dist. LEXIS 51259, 2006 WL 2092383, *5-6 (N.D. Fla. 2006) (A prisoner "must allege facts showing that the allegedly retaliatory conduct would not have occurred but for the retaliatory motive.").  Therefore, any potential claim of retaliation against Defendant White must fail.

[5] Specifically, Calhoun states that Defendant Lambert admitted to strategically cuffing his hands to the front, instead of the rear, so that he could justify using force against Calhoun by saying that Calhoun came towards him and the force used was thereby necessary.  (*Id*. at 22).

Defendant Lambert choking Calhoun and they unlocked the gate and entered the unit to assist Plaintiff. (*Id*.). Officer Boggan radioed for help and four other officers responded, including Warden Stewart. (*Id*. at 24). Calhoun claims that when Warden Stewart observed the wrongful handcuffing of Calhoun's hands to the front of his body, she advised Defendant Lambert to "cover-up the incident . . . by giving [Calhoun] some disciplinaries." (Doc. 7 at 24). Plaintiff Calhoun claims Lambert damaged the plates in his jaw requiring the subsequent removal of the plates. (Doc. 7 at 8).

To the contrary, Defendant Lambert avers that while walking down the segregation tier on October 5, 2012, he observed a "light coming from inmate Calhoun['s] cell" that appeared to be that of a contraband cell phone but denies that he had knowledge that the phone belonged to inmate Devin Hill. (Doc. 67-1 at 1). Defendant Lambert claims he handcuffed Calhoun to the rear and removed him from his cell to perform a search of Calhoun for the phone. (*Id*.). He claims he felt and saw the cell phone "tied off to the back of [Calhoun's] pants[;]" however, when he attempted to seize the phone, "Inmate Calhoun pushed away from Officer Lambert and ran down the pipe chase between tiers L-1 and L-2 [and] Officer Lambert pursued inmate Calhoun into the pipe chase." (Doc. 67-3 at 2). Defendant Lambert denies hitting, kicking, or slamming Calhoun in any way, but does explain that Calhoun was "act[ing] in a very aggressive manor and was not complying with the orders given. So [he] put inmate Calhoun on the ground grabbing his upper torso and taking him to the ground using [his] body weight." (*Id*. at 1). Defendant Lambert and Officers White and Harris placed leg irons on Calhoun once he was forced to the ground, and the cell phone was retrieved from Calhoun. (Doc. 67-3 at 2).

The record evidences that following the incident, Calhoun was escorted to the healthcare unit where he complained to the medical staff that, "[an Officer jumped on me handcuffed and I'm in pain." (Doc. 52-1 at 5). He was examined and the body chart reports he had a swollen jaw on the right side, a knot on his left knee, an abrasion on his elbow, and complained of back pain. (*Id*.). An x-ray of his jaw and knee was provided which revealed no fractures or dislocation of either Calhoun's jaw or knee and further stated that the plates in his jaw were not damaged.[6] (*Id*. at 13). Calhoun was given Motrin to alleviate the complained of pain and returned to segregation. (*Id*. at 5). Defendant Lambert was also taken to the doctor subsequent the incident "for treatment" (doc. 35-2 at 5-6) as he apparently sustained some injuries while trying to restrain Plaintiff. (Doc. 35-7 at 2). The use of force by Defendant Lambert was subsequently investigated internally and found to be justified. (Doc. 67-3 at 2). Thereafter, Calhoun received a disciplinary charge for the incident, and, after being found guilty of the same, he received 45 days in disciplinary segregation and 45 days loss of phone, store, and visitation privileges. (Doc. 1 at 25-27).

Plaintiff Calhoun brings this action against Officer Lee and Officer White for failing to protect him on September 23, 2012, against Officer Lambert for using excessive force against him on October 5, 2012, and against Warden Stewart and Warden Myers for failing to protect him against both attacks.[7] Calhoun sues each defendant in his

---

[6] The radiology report specifically states that the, "fixation hardware in the mandible is intact." (Doc. 52-1 at 13).

[7] Plaintiff Calhoun's initial complaint alleged three assaults occurring on September 23, 2012, October 5, 2012, and April 23, 2013. (*See* Doc. 1). However, Plaintiff's complaint, amongst other deficiencies, was not a "short and plain statement" of his claim and violated Fed. R. Civ. P. 8(a). Therefore, the Court ordered Plaintiff to submit an amended complaint in compliance with Rule 8. (Doc. 5). In submitting his amended

or her official and individual capacity and requests declaratory and injunctive relief as well as compensatory and punitive damages in the amounts of $350,000.00 and $175,000.00 respectively.   (Doc. 7 at 9, 14).    Defendants answered Plaintiff's suit denying the allegations and further asserting the affirmative defenses of sovereign and qualified immunity.  (Docs. 35, 52, 66, 67).  The Court determined the special reports filed by Defendants should be treated as a Motion for Summary Judgment.  (Doc. 69). After review of all pleadings in this action, including Plaintiff's Response to Defendant's Motion for Summary Judgment (doc. 72), the Court has determined this motion is ripe for consideration.

## II.   SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The *Federal Rules of Civil Procedure* grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), the Supreme Court held that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

complaint, Plaintiff Calhoun voluntarily dismissed one of his claims and four originally named defendants.  (*See* Doc. 7 at 4) ("Plaintiff ask Honorable court to see attachment complaint he wishes to only state incidents on September 23, 2012 and October 5, 2012 only. . . ."). Thus, Calhoun's allegation of failure to protect and excessive force related to the April 23, 2013 incident, which is extremely factually similar to Plaintiff's other September and October claims, was dismissed from this action on October 22, 2013 by court docket entry.

there is no genuine issue as to any material fact. . . ."  However, all of the evidence and

factual inferences reasonably drawn from the evidence must be viewed in the light most

favorable to the nonmoving party. *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157, 90 S.

Ct. 1598, 26 L. Ed. 2d 142 (1970); *Jackson v. BellSouth Telecomms*., 372 F.3d 1250,

1280 (11th Cir. 2004).

> Federal Rule of Civil Procedure 56(e) further provides:
>
> If a party fails to properly support an assertion of fact or fails to properly
> address another party's assertion of fact as required by Rule 56(c), the
> court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials—
> including the facts considered undisputed—show that the movant is
> entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

The party seeking summary judgment "always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of

'the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue

of material fact."  *Celotex*, 477 U.S. at 323.  The movant can meet this burden by

presenting evidence showing there is no dispute of material fact or by pointing out to the

district court that the nonmoving party has failed to present evidence in support of some

element of its case on which it bears the ultimate burden of proof.  *Id*. at 322-25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  *See Stabler v. Fla. Van Lines, Inc.*, Civ. A. No. 11-0103-WS-N, 2012 U.S. Dist. LEXIS 1637, 2012 WL 32660, at *5 (S.D. Ala. Jan. 6, 2012) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)).  Summary judgment is proper when "a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal quotation marks omitted).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (internal citations omitted).  "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *AGSouth Genetics, LLC v. Cunningham*, No. CA 09-745-C, 2011 U.S. Dist. LEXIS 51790, 2011 WL 1833016, at *2 (S.D. Ala. May 13, 2011).

III.   DISCUSSION

In this action, Plaintiff seeks redress for an alleged constitutional deprivation pursuant to 42 U.S.C. § 1983. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of

> Congress applicable exclusively to the District of Columbia shall be
> considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (1994). Plaintiff seeks monetary damages and injunctive relief. For the

reasons that follow Plaintiff cannot prevail on any of his claims.

    A.    <u>Injunctive Relief</u>.

In addition to compensatory and punitive damages, Plaintiff Calhoun requested

injunctive and declaratory relief against Defendants. (Doc. 7 at 31-32). The Court notes

that Plaintiff is no longer incarcerated at Fountain, where the complaint arose, as he was

transferred to Bullock Correctional Facility, away from the defendants in this action.

(Doc. 73). Therefore, his requests for injunctive and declaratory relief are moot. *Spears*

*v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir.) ("[A]n inmate's request for injunctive and

declaratory relief in a section 1983 action fails to present a case or controversy once an

inmate has been transferred.") (citation and quotation marks omitted), *cert. denied*, 488

U.S. 1046, 109 S. Ct. 876, 102 L. Ed. 2d 999 (1989).

    B.    <u>Defendants are absolutely immune from suit against Plaintiff's official</u>
        <u>capacity claims.</u>

To the extent Plaintiff is proceeding against the defendants in their official

capacities, those claims fail. The Eleventh Amendment, which specifically prohibits suits

against "the United States by Citizens of another State, or by Citizens or Subjects of any

Foreign State," has long been held to apply "equally to suits against a state brought in

federal court by citizens of that state." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277

(11th Cir. 1998). "The state need not be formally named as a defendant for the

amendment to apply; state officials sued in their official capacity are also protected by the amendment." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)).   "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

Plaintiff alleges that Defendants Warden Stewart and Warden Myers and the remaining Defendants, all of whom were employed by the State of Alabama Department of Corrections as officers at G.K. Fountain Correctional Facility at the time of the incidents alleged in the complaint, violated his constitutional rights.  It is well settled in this circuit that suits seeking monetary relief against state correctional officers in their official capacities are generally barred by the Eleventh Amendment.  *See Taylor v. Adams*, 221 F.3d 1254, 1256 (11th Cir. 2000); *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997); *Dean v. Barber*, 951 F.2d 1210, 1215 n.5 (11th Cir.1992); *Free*, 887 F.2d at 1557.

> Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997); *Powell v. Barrett*, 496 F.3d 1288, 1304, 1308 (11th Cir. 2007) (state defendants sued in their

official capacity for monetary damages are immune from suit under the
Eleventh Amendment).

*Johnson v. Folks*, 2014 U.S. Dist. LEXIS 16027, 7-9 (S.D. Ala. Jan. 17, 2014) (quoting

*Johnson v. Keaton*, No. 2:05-CV-1238-WKW, 2008 U.S. Dist. LEXIS 75356, 2008 WL

4493242, at *6 (M.D. Ala. Sept. 29, 2008)).

It is clear from the pleadings that the defendants were state officials at the time

the action arose and are entitled to sovereign immunity under the Eleventh Amendment

for claims seeking monetary damages from them in their official capacities. Therefore,

the defendants are entitled to absolute immunity from Plaintiff's claims asserted against

them in their official capacities.

C. <u>Individual Capacity Claims.</u>

The defendants have denied that they violated any of Plaintiff's constitutional

rights and have asserted the defense of qualified immunity. (*See* Docs. 35, 66).

Qualified immunity protects government actors from liability, when performing

discretionary functions, to the extent that "their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have

known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396

(1982). In *Lassiter v. Alabama A&M University*, 28 F.3d 1146 (11th Cir. 1994), the

Eleventh Circuit restated the principles governing qualified immunity cases:

> That qualified immunity protects government actors is the usual rule; **only
> in exceptional cases will government actors have no shield against
> claims made against them in their individual capacities**. . . . Unless a
> government agent's act is so obviously wrong, in the light of pre-existing
> law, that only a plainly incompetent officer or one who was knowingly
> violating the law would have done such a thing, the government actor has
> immunity from suit.

28 F.3d at 1149 (internal footnote and citations omitted) (bold added).[8]

The defendant has the initial burden of proving that he acted within the scope of his discretionary authority. *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994). To determine whether a defendant acted within the scope of his discretionary authority, the court must consider whether the actions of which the plaintiff complains "(1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'" *Id*. at 1566 (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)). Thus, the term "discretionary authority" in this context includes actions that not only entail an element of discretion but also those actions that are more ministerial in nature. *See id*. Accordingly, discretionary authority will generally be found if the defendant is working within the confines of his or her job.

In this case, Plaintiff does not contest that Defendants were acting within the scope of their discretionary authority. Each of the claims asserted against Defendants in this case is clearly related to the Defendants' responsibilities with regard to their jobs. Their alleged actions, or failure to act, in this case were, accordingly, within the scope of their discretionary authority. Thus, the Court will analyze whether or not Plaintiff has carried his burden of alleging a constitutional violation. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Because Plaintiff is a prisoner, the Eighth Amendment's proscription against "cruel and unusual punishments" governs

---

[8] The Eleventh Circuit has made clear that the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skritich v. Thorton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted).

his claims, whereas the Fourteenth Amendment does not apply to his claims because he is

not a pretrial detainee. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, n.4 (11th Cir. 1995).

### a. Claims against Defendants Lee and White for Failure to Protect.

Plaintiff Calhoun claims Defendants Lee and White failed to protect him on

September 23, 2012 from being assaulted by inmate Devin Hill.  Plaintiff claims Hill was

a close custody inmate who should not have been out of his cell at the same time Plaintiff

was out of his cell for a shower (doc. 7 at 6) and that the defendant officers took their

time breaking up the assault and failed to radio for assistance.  (*Id*. at 18).

In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189,

109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), the Supreme Court reiterated a state's

constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there
> against his will, the Constitution imposes upon it a corresponding duty to
> assume some responsibility for his safety and general well-being. . . . The
> rationale for this principle is simple enough: when the State by the
> affirmative exercise of its power so restrains an individual's liberty that it
> renders him unable to care for himself, and at the same time fails to
> provide for his basic human needs — e.g., food, clothing, shelter, medical
> care, and reasonable safety — it transgresses the substantive limits on state
> action set by the Eighth Amendment and the Due Process Clause.

489 U.S. at 199-200 (citations omitted).   The Eighth Amendment provides that,

"[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual

punishments inflicted." U.S. Const. amend. VIII.   The Eighth Amendment

proscription of cruel and unusual punishment prohibits prison officials from exhibiting

deliberate indifference to a substantial risk of serious harm to an inmate.  *Farmer v.

Brennan*, 511 U.S. 825, 832-34, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

In order to prevail on an Eighth Amendment claim, an inmate must make both an objective and a subjective showing.  In *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994), the court delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

25 F.3d at 983.

### 1.      Substantial Risk of Serious Harm.

In the present action, Plaintiff is required to establish the first element, the objective component, by showing that a substantial risk of serious harm existed.  The objective component inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner."  *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993).   This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'"  *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)).  The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . , but must be balanced against competing penological goals."  *LaMarca*, 995 F.2d at 1535 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (internal quotation marks omitted)).

To establish this objective element, the burden is on Plaintiff to show that at the time he was assaulted that a substantial risk of serious harm existed that would result in injury to him in particular.  *LaMarca*, 995 F.2d 1535.  Plaintiff's evidence on this

element, however, is insufficient because the evidence that can be garnered from his submissions is scant. He maintains that while being escorted back to his cell after showering, he was "'brutally and savagely' attacked by inmate Devin Hill that was housed in the close custody unit, on tier # one (1) that was unlawfully let-out of his cell, ran [past Officer White] through an open gates that supposed to have been locked at all times while conducting the segregation-seg-unit showers." (Doc. 7 at 17). Beyond these facts, Plaintiff provides no details that can be considered on summary judgment demonstrating that the conditions inside of the segregation unit constituted a substantial risk of harm to him, such as, facts showing inmate–on-inmate violence occurring during shower times, understaffing,[9] or inadequate procedures to ensure safety. *See Morgan v. Davenport*, CA No. 10-00665-KD-N, Jan. 19, 2012, 2012 WL 426729, at *6 (S.D. Ala. Jan. 19, 2012) (citing P*urcell ex rel. Estate of Morgan v. Toombs Cnty.*, Ga., 400 F.3d 1313, 1321 (11th Cir. 2003)). Additionally, Calhoun fails to prove that any documented evidence existed putting any officers on notice that he and inmate Hill were enemies or had issues with each other. This lack of knowledge eliminates any known risk of harm to

---

[9] Plaintiff alleges that there should have been three officers maintaining the segregation unit during showering times, instead of two. (Doc. 7 at 17). However, Plaintiff points to no rules, regulation, or any law requiring such. Assuming, without deciding, that there may be an administrative regulation that requires this, not every deviation from an agency's rules violates the Constitution. *Smith v. Georgia*, 684 F.2d 729, 732 n. 6 (11th Cir. 1982); *see United States v. Caceres*, 440 U.S. 741, 754-55, 99 S. Ct. 1465, 1473, 59 L.Ed.2d 733 (1979) (evidence was admitted at trial even though it was obtained in violation of an agency's rules because it was not obtained in violation of the Constitution); *see also Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1528 (11th Cir. 1987) (a violation of a state statute does not necessarily equate to a constitutional violation). It is clear, for a § 1983 claim, the Constitution does not mandate that three officers be in the segregation unit during shower times. *Cf. Smith v. Campbell*, No.2:05-cv-0975-WKW, 2007 U.S. Dist. LEXIS 103197, 2008 WL 659793, at *5 (M.D. Ala. Mar. 6, 2008) (A substantial risk of serious harm was not found where the lone allegation of Plaintiff was that a guard was not at his post.). Thus, Plaintiff has not carried his burden of pleading his § 1983 claim.

Calhoun regarding being out of his segregation cell for a shower on September 23, 2012 at the same time inmate Hill was receiving a haircut in the lobby.

Therefore, considering that Plaintiff's evidence is a scintilla, the Court finds that a reasonable jury would not be able to return a verdict for Calhoun on the element that a substantial risk of serious harm existed at the time he was assaulted.  Thus, Plaintiff Calhoun has failed to establish the first element of an Eighth Amendment claim that a substantial risk of serious harm existed at the time he was assaulted.

2.      <strong>Deliberate Indifference.</strong>

Even though Calhoun's failure to establish one of the elements of an Eighth Amendment failure to protect claim will result in a recommendation of dismissal being entered, the Court will address the second element of a failure to protect claim, the subjective element of deliberate indifference.   *LaMarca*, 995 F.2d at 1535.   The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind."  *Sims*, 25 F.3d at 983-84 (citing *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)).   This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  *Farmer*, 511 U.S. at 834 (quotation and citation omitted).  In prison conditions cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety.  *Id*. (citations omitted).   In defining "deliberate indifference," the Supreme Court in *Farmer* stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

17

*Farmer*, 511 U.S. at 837.   The Court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment.  *Id*. at 839-40.

There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." *Farmer*, 511 U.S. at 838.  It is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key.  *See, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996).   A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," "a standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Farmer*, 511 U.S. at 844-45 (citations omitted).   "[A] prison custodian is not the guarantor of a prisoner's safety."  *Purcell ex rel. Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (citation omitted).   A prison official's duty under the Eighth Amendment is to ensure "reasonable safety" under the conditions inherent in a jail setting.  *See Farmer*, 511 U.S. at 844-45.   "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.  Prison officials must "take reasonable measures to guarantee the safety of the inmates."  *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984).

The evidence presented by Calhoun does not show that either Defendant Lee or Defendant White knew that Plaintiff would be assaulted or injured by inmate Hill. Plaintiff's amended complaint (doc. 7) fails to allege that either defendant knew of any

facts or history between inmate Calhoun and Hill that would indicate a potentially dangerous situation existed.[10]  Even though Calhoun's failure to give notice to either Defendant that he feared an attack is relevant to his claim, it is not dispositive.  *Hale*, 50 F.3d at 1583.  A plaintiff may also show a defendant "had subjective knowledge of a generalized, substantial risk of serious harm from inmate violence."  *Id*.  But Calhoun does not allege in his complaint and fails to offer evidence that either defendant Lee or White knew of any risk of serious harm to him, specific or generalized, from inmate Hill or rampant violence occurring during shower time.  In fact, the record is void of facts proving or indicating any subjective knowledge or recklessness on the part of Defendants.  And, it is incumbent on Calhoun to make such an evidentiary showing that a defendant drew the inference and "knowingly or recklessly 'disregard[ed the] risk [of harm] by failing to take reasonable measures to abate it,'" *Hale*, 50 F.3d at 1583 (quoting *Farmer*, 511 U.S. at 848, 114 S. Ct. at 1984), as "[m]erely negligent failure to protect an inmate from attack does not justify liability under § 1983. . . . The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act

---

[10] Calhoun argues in his response to Defendants' motion for summary judgment that Warden Stewart had prior knowledge of Calhoun reporting that inmate Hill was a threat to him.  (Doc. 72 at 1).  However, Calhoun's statement is completely unsupported by him or the record.  His conclusory allegation is founded in the misinterpreted statement of Defendant Lee.  Defendant Lee affirms in his submitted affidavit, "it was noted that the Plaintiff and inmate Hill should have no contact with one another."  (Doc. 35-4 at 2; Doc. 72 at 1).  Calhoun, however, takes this statement completely out of context when using it to support his argument that Defendants had notice of harm to Plaintiff.  Rather, Defendant Lee's statement, read in total of his affidavit, clearly indicates that subsequent to the assault, it was noted that the two inmates should not have contact with each other.  (*See* Doc. 35-4 at 2).  Furthermore, Warden Stewart, in her sworn affidavit, stated that she had "no knowledge or documentation of Inmate Derrick Calhoun reporting prior to 9-25-2012 that Inmate Hill was going to attack Inmate Calhoun" (doc. 35-6 at 1), and Warden Myers affirmed in his sworn affidavit that "On September 23, 2012, inmate Derrick Calhoun (B/214085) never stated that he had a problem with anyone in Segregation or Population."  (Doc. 35-7 at 1).

can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.) (citations and internal quotations omitted), 496 U.S. 928, 110 S. Ct. 2624, 110 L. Ed. 2d 645 (1990).  Thus, Calhoun must, and he fails, to show that Defendants knew he was at a substantial risk of harm by being out of his cell at the same time as inmate Hill, and that they knew inmate Hill would attack Plaintiff.

Additionally, the defendants carry their burden of summary judgment.  *See Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, 'depositions, answers to interrogatories, and admissions on file.'") (internal quotations and citations omitted). Defendant Lee's sworn affidavit confirms that defendants were not deliberately indifferent to Calhoun.  Lee states that to escort Calhoun to and from the shower the door to the tier had to be unlocked, that on that date he "had no knowledge of the Plaintiff and inmate Hill's conflict with one another," and that inmate Hill "neither pushed nor kicked the Plaintiff."  (Doc. 35-4 at 2).  Contrary to Plaintiff's claim, all record evidence indicates that Defendant Lee followed protocol and personally escorted Plaintiff at all times while out of his cell and never left him unattended and susceptible to danger.  The medical evidence further supports Defendant Lee's claim and belies Calhoun's allegation that he was brutally and savagely attacked.  The body chart Calhoun received on September 23, 2012 evidences a swollen jaw and scratches and abrasions on Calhoun's knees and elbow.  (Doc. 35-2 at 8).  These injuries are consistent with a bump, push, or shove to the ground.  They are not consistent with a vicious attack as claimed by Plaintiff.

The record is void of any evidence that Defendant Lee knew and allowed Plaintiff to be "brutally and savagely" attacked by inmate Hill as the complaint suggests.  Furthermore, there is no evidence to contradict Defendant Lee's statement or to address the efficacy of the guarding of segregation inmates during shower times.  Thus, due to the lack of evidence, a reasonable jury would not be able to find Defendant Lee's conduct deliberately indifferent or wanton, and therefore, could not find for Plaintiff.

Furthermore, with respect to Defendant White, his sworn affidavit confirms that he was working at the control panel in the lobby of the segregation unit on September 23, 2012, where inmates were getting haircuts.  (Doc. 35-3 at 1).  Defendant White states that his back was turned from inmate Hill, who was receiving a haircut, at the time Calhoun was being escorted to his cell after a shower.  Defendant White avers that "Inmate Hill got up out the chair and ran pass [sic] Officer White and ran down tier # 2 behind Sergeant Lee and bumped Inmate Calhoun to the floor.  Sgt. Lee immediately placed Inmate Calhoun in Inmate Calhoun assigned cell # 28.  Sgt. Lee escorted Inmate Hill to Inmate Hill assigned cell # 15."  (Doc. 35-3).  Thereafter, a superior officer was notified of the assault (*id*.), the inmates were taken to the healthcare unit to be examined for any injuries (*id*.), and inmate Hill received a disciplinary charge for the incident to which he pleaded guilty.  (Doc. 35-5 at 2-3).  This evidence only reflects that inmate Hill was faster than Defendant Officer White and, at worst, negligently got past Defendant White and was able to knock Plaintiff to the ground.  The Defendants quickly handled the situation and no additional officer assistance was necessary.  The record evidence is void of any facts indicating, much less proving, deliberate indifference.

Accordingly, the Court concludes that a reasonable jury would not be able to find for Calhoun on the deliberate indifference element as the evidence is only a scintilla with respect to Defendant White and is completely lacking in regard to Defendant Lee.  *See Smith*, 2007 U.S. Dist. LEXIS 103197, 2008 WL 659793, at *6 (M.D. Ala. Mar. 6, 2008) (unpublished) (finding that plaintiff failed to establish that the defendant had the requisite subjective awareness as the attack "was isolated and spontaneous and apparently unanticipated by [plaintiff] as well as Defendants.").[11]

### 3.   Causation.

Although not required to do so, in light of Calhoun failing to meet his burden on the other two elements, the Court will briefly discuss the causation element.  *Carter v. Galloway*, 352 F.3d 1346, 1350 n.10 (11th Cir. 2003) (declining to discuss the causation element after it determined the defendants did not have the information needed to draw an inference that a substantial risk of serious harm existed by leaving plaintiff in cell with a "problem inmate").  The evidence indicates that an attack on Calhoun appears not to have been anticipated by Plaintiff or Defendants.  Plaintiff Calhoun's evidence does not

---

[11] In cases similar to this action where a plaintiff alleges guards and prison officials enabled one inmate to attack another inmate, courts have granted summary judgment to the defendants unless the record contained probative evidence of the officers' deliberate indifference.  *See*, e.g., *Davis v. Tucker*, 322 F. App'x 369, 370-71 (5th Cir. 2009) (interoffice communications between prison officials indicated that several informants disclosed that the defendants paid a prison gang to attack the plaintiff); *Sepulveda v. Burnside*, 170 F. App'x 119 (11th Cir. 2006) (unpublished) (evidence showed the defendants knew that another inmate was a threat to the plaintiff based on the inmates' prior history, that the defendant and the assailant had a close relationship, and that the defendant was being sued by the plaintiff); *Frierson v. Bell*, No. 1:09-94-DCN-SVH, 2010 U.S. Dist LEXIS 102380, at *6 (D.S.C. July 22, 2010) (plaintiff received anonymous note from gang member that the defendant had paid the gang to attack the plaintiff); *O'Bryant v. Langford*, No. 5:05cv131/RS/EMT, 2007 U.S. Dist LEXIS 36813 (N.D. Fla. May 21, 2007) (plaintiff presented evidence that the defendants instructed the other inmate to attack the plaintiff).

reflect that the attack was proximately caused by the lack of security, an environment of inmate-on-inmate violence, or overcrowded conditions. *Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005) ("[O]ccasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment."). While it is unfortunate that Calhoun was injured, notably minor injuries, not "every injury suffered by one prisoner at the hands of another [inmate] translates into constitutional liability for the prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977.

### b.  Claims against Defendant Lambert.

Plaintiff Calhoun claims Defendant Lambert is liable for using excessive force unnecessarily against him on October 5, 2012, when, absent the presence of any other officers, Defendant Lambert handcuffed Plaintiff to the front, removed Plaintiff from his cell, escorted Plaintiff to the lobby, questioned him about possessing a contraband cell phone, and then assaulted him when he failed to produce the cell phone.  (Doc. 7 at 8). To establish a constitutional violation for excessive use of force, Plaintiff must first show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, meaning Defendant's conduct "shocks the conscience," *Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1196 (11th Cir. 2003), and, second, Plaintiff must show that "the officials act[ed] with a sufficiently culpable state of mind," i.e., that they acted "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).  Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'"

*Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)).

In the prison security context, the factors used to determine whether there has been a violation of the Eighth Amendment are: 1) the need for the application of force, 2) the relationship between that need and the amount of force used, 3) the threat reasonably perceived, 4) any efforts to temper the severity of a forceful response, and 5) the extent of injury suffered. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321). The courts recognize that corrections officials often must make decisions "'in haste, under pressure, and frequently without the luxury of a second chance.'" *Id*. at 6 (citing *Whitley*, 475 U.S. at 320). Therefore, "'the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id*. (citations omitted).

In the instant case, the record before the Court shows that there was a need for some force as Defendant Lambert was attempting to maintain order in the segregation unit on October 5, 2012, by retrieving a contraband cell phone from Plaintiff. It is undisputable, based on the pleadings, that Plaintiff Calhoun was in fact in possession of a contraband cell phone on October 5 and refused to relinquish it to Defendant Lambert. Plaintiff's complaint details the facts proving Calhoun denied possessing the phone (see doc. 7 at 22 where Plaintiff states, "I told Officer Anthony Lambert, that I did not have inmate Hill['s] 'cell phone' and that he can shake me down and my cell if he wish."), and the following documents prove unequivocally that Calhoun was in possession of the contraband phone: 1) the Incident Report states that "Officer Walker confiscated the cell

phone from inmate Calhoun" (doc. 35-2 at 5), 2) the Investigative Report details that the cell phone was retrieved (doc. 67-3), and 3) in his initial complaint, Plaintiff Calhoun admits, "I gave Officer Walker the cell phone I had on me that Officer Lambert didn't no even were phone was. . . ." (Doc. 1 at 30). Therefore, the record evidence belies Calhoun's claim that Defendant Lambert removed him from his cell *without cause* and attacked him. Instead, the evidence is clear that Calhoun was in possession of contraband and that he disobeyed orders from Defendant Officer Lambert to hand the phone over. An inmate "is not at liberty to ignore or disobey, without consequence, the lawful orders of his custodians or the rules and regulations of a jail." *West v. Sconyers*, 2010 U.S. Dist. LEXIS 123573, 2010 WL 4822084, *7 (M.D. Ala. 2010) (unpublished). "Strict adherence to rules and orders within a penal institution's walls are necessary for discipline, and even more importantly, for the safety and security of inmates, guards, and visitors alike." *Id.*

The record, including Defendant's affidavit, the medical records, and Plaintiff's response to the motion for summary judgment, further supports the finding that the force used by Defendant Lambert was appropriate under the circumstances and the injuries sustained by the parties were minor, demonstrating minimal force was used. Defendant Lambert affirms in his sworn affidavit that after Calhoun denied possession of the phone, he searched Plaintiff, saw and felt the cell phone, but when he attempted to retrieve the contraband item, Calhoun took off running down the segregation pipe chase, and he chased after Calhoun. (Doc. 67-1). Defendant Lambert further avers that after seizing Calhoun, Calhoun "acted in a very aggressive manor and was not complying with the orders given. So [Officer Lambert], put inmate Calhoun on the ground by grabbing his

upper torso and taking him to the ground using [his] body weight," and other officers responded and assisted Defendant Lambert in subduing Calhoun and retrieving the contraband cell phone.  (*Id.*).  On the other hand, Plaintiff states that Lambert hit him in the jaw, ran him in to the walls, slammed him on the floor, threw him into the segregation tunnel, kicked and dragged him, and applied a headlock "choke hold" on him which rendered him unconscious. (Doc. 7 at 22-23).  Defendant Lambert denies each of these allegations, and they are unsupported by the medical records, as the body chart Calhoun received following the incident revealed only minor injuries, *see*, *infra*, p. 5, inconsistent with Calhoun's claims that he was hit, kicked, slammed, punched, dragged, and choked unconscious.

The facts and records submitted by the defendants are unchallenged by Calhoun. Plaintiff Calhoun fails to go beyond the pleadings to defeat Defendant's motion for summary judgment and show there is an issue for trial.  *See Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, 'depositions, answers to interrogatories, and admissions on file.'") (internal quotations and citations omitted).  Plaintiff's response to Defendant Lambert's motion for summary judgment does not dispute Defendant Lambert's denials, assertions, or recitation of the facts contained in his special report or affidavit; instead, Plaintiff makes one argument utilizing circular reasoning to support his claim.  (*See* Doc. 72).  Plaintiff Calhoun postulates that because Officer Lambert is no longer employed with the Alabama Department of Corrections, Plaintiff's claims must be

true.[12]  (Doc. 72 at 4).  This is insufficient to sustain Calhoun's claim.  Calhoun, nor the defendants, presented any evidence reflecting why or when Officer Lambert left his employment from the Alabama Department of Corrections.  Thus, the Court is left to consider only the evidence currently before it and that evidence reflects that the force used by Officer Lambert on October 5, 2012 was justified (doc. 67-3), that Plaintiff received a disciplinary report for the incident, and the Plaintiff was found guilty of possessing contraband and assaulting an official due to the incident and received 45 days of disciplinary segregation, including the loss of phone, store, and visitation rights for 45 days.  (Doc. 35-2 at 5-6; Doc. 1 at 25-27).

After a complete review of the pleadings, the Court finds that Defendant Lambert was endeavoring to maintain the rules and order of the prison when he attempted to retrieve contraband from Calhoun on October 5, 2012.   Furthermore, given that Defendant Lambert was working alone at the time of the incident,[13] he was placed in a threatening and dangerous situation when Plaintiff chose to disobey the orders given to produce the phone.   *See Danley v. Allen*, 540 F.3d 1298, (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010) ("[P]rison guards do not have the luxury or obligation to convince every inmate that their orders are

_____

[12] Specifically, Plaintiff's single response to Defendant Lambert's motion for summary judgment is that, "as a result of this action being made against [Defendant Lambert] by the Plaintiff, Officer Lambert is no longer employed by the ADOC.  That in itself speaks to the preponderance of truth and evidence in support of the allegation that has been made by the Plaintiff.  Warden Myers stated in his sworn affidavit that the Plaintiff's allegations are false and without merit, and yet, Officer Lambert has been terminated." (Doc. 72 at 4).

[13] Calhoun asserts that Defendant Lambert did not follow proper protocol when Lambert, without the assistance of another officer, removed Calhoun from his cell and handcuffed his hands to the front, instead of the rear.   (Doc. 7 at 23).   These allegations do not amount to constitutional violations.  *See*, *infra*, n.7.

reasonable and well-thought out.  Certainly they are not required to do so where an inmate repeatedly fails to follow those orders."); *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) ("Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.").  Therefore, it is obvious that some use of force was justified, but the question in the present case becomes one of degree.

While Plaintiff Calhoun and Defendant Lambert disagree about the level of force used, the evidence in the record, mainly the medical record, including the body chart and the negative radiology reports, proves that the force used was not excessive.  "Once it is established that the force was applied in a good faith effort to maintain discipline and not maliciously or sadistically for the purpose of causing harm, the courts give great deference to the actions of prison officials in applying prophylactic or preventive measures."  *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991). "[F]ederal courts must defer in many matters to the expert judgment of these administrators, particularly in matters of internal security and order."  *Id*.  Based on the objective medical reports, the Court finds there is no genuine issue of material fact and Defendant Lambert is entitled to judgment as a matter of law, as "the record taken as a whole could [not] lead a rationale trier of fact to find for [Plaintiff Calhoun]."  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).

### c.    Claims against Defendants Stewart and Myers.

Plaintiff is suing Wardens Stewart and Myers for failing to respond to his handwritten letters that notified them of the September 23 and October 5, 2012 incidents.

Calhoun specifically states that he put the warden defendants "on notice [of a substantial risk of serious harm] with reported complaints etc [that he] . . . fear[ed] for [his] life after crooked officers let [him] g[e]t assaulted in handcuffs on . . . 9/23/12. [A]nd when the crooked officer handcuff[ed] [him] wrongful[ly] and unlawful[ly]" assaulted him on October 5, 2012." (Doc. 7 at 5).

To the extent that Plaintiff Calhoun is alleging that Defendants failed to appropriately respond to his letters, this is not in and of itself a constitutional violation. Just as prison grievance procedures do not "provide an inmate with a constitutionally protected interest," *Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011), a warden's failure to respond to an inmate's letters does not state a claim for violation of his constitutional rights. *See also, Pressley v. Beard*, 2005 U.S. Dist. LEXIS 41407, 2005 WL 2347369 *4 (M.D. Pa. Sept. 26, 2005) (noting that liability cannot be placed on prison officials for failing to take corrective action following the plaintiff's unsuccessful grievance).

Otherwise, this claim appears to be an allegation that Defendants showed deliberate indifference to a substantial risk of serious harm by continuing to house him in the segregation unit after September 23, 2012. It is clear that prison officials have an obligation to protect prisoners from violence inflicted upon them by other prisoners. *See LaMarca v. Turner*, 995 F.2d 1526, 1539 (11th Cir. 1993) (holding that prison warden could face liability when his failure to take appropriate measures to improve prisoner safety created a climate which preordained the violence which ensued); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985) (holding safety director whose responsibilities included disciplining police officers and setting police department policy

could be liable for failing to take corrective steps in the face of pattern of excessive force engaged in by officers).

> "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). Prison officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984). Only "[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).
>
> Thus, a prisoner-plaintiff must first demonstrate "an objectively substantial risk of serious harm to prisoners." *Id.* at 1028-29. Then, the plaintiff must show that the defendant was deliberately indifferent, which requires the following: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (internal quotation marks omitted).

*Woodyard v. Patterson*, Civil Action No.: 12-00566-WS-N, 2014 U.S. Dist. LEXIS 137365, 20-21 (S.D. Ala. Aug. 22, 2014) (quoting *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). *Accord, e.g., Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) ("To survive summary judgment on a deliberate indifference failure-to-protect claim, 'a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" (quoting *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013) (internal quotation marks omitted)).

As to the alleged claim that Defendants Stewart and Myers showed deliberate indifference to a risk of Calhoun being attacked on September 23, 2012, this claim must fail. There is no evidence that Defendants knew Plaintiff was at any risk for being attacked by inmate Hill. In fact, Plaintiff does not allege that Inmate Hill or any inmate

ever threatened him, or that he feared for his safety prior to being assaulted by inmate Hill. Moreover, Calhoun fails to allege the necessary element that he notified an officer of a threat of harm to him. The record is completely void of facts showing that any defendant was aware of a risk of harm to Plaintiff prior to September 23 and disregarded the risk. Therefore, Plaintiff Calhoun fails to carry his burden of proving Defendants Stewart and Myers were deliberately indifferent to his safety.

As to the alleged claim that Defendants Stewart and Myers showed deliberate indifference to his safety causing him to be attacked by Officer Lambert, this claim too must fail. While Plaintiff proved that he sent handwritten notes to the wardens notifying and complaining of the assault by inmate Hill (doc. 1 at 22-24), this has no relevance or connection to his claim against Officer Lambert. The correspondence does not mention Officer Lambert, and Calhoun produces no evidence or allegation that he never notified the wardens that he feared for his safety when Officer Lambert was working. Therefore, Calhoun has failed to carry his burden of showing any of the needed elements of his claim.

Calhoun also attempts to argue liability on the part of Defendants Stewart and Myers for failing to protect him from attacks based purely upon their status as supervisors of the segregation unit. (Doc. 7 at 12-13). Such a claim is rooted in the theory of *respondeat superior* and is not actionable. In order to state a claim upon which relief can be granted in a § 1983 action, a plaintiff must establish a causal connection between each defendant's "actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights." *Frankum v. Chapman*, 2009 WL 1118875, *3 (S.D. Ala. 2009) (citations omitted). Liability for an alleged constitutional

violation cannot be established on the basis of a theory of *respondeat superior*.   *See*

*Edwards v. Alabama Dep't of Corrs.,* 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A

theory of *respondeat superior* is not sufficient to support [a] § 1983 claim. . . .").

> "It is well established in this Circuit that supervisory officials are not
> liable under § 1983 for the unconstitutional acts of their subordinates on
> the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*,
> 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and
> citation omitted); *Gonzalez*, 325 F.3d at ----, 2003 WL 1481583, at *4
> (concluding supervisory officials are not liable on the basis of *respondeat
> superior* or vicarious liability). Instead, supervisory liability under § 1983
> occurs either when the supervisor personally participates in the alleged
> unconstitutional conduct or when there is a causal connection between the
> actions of a supervising official and the alleged constitutional deprivation.
> *Gonzalez*, 325 F.3d at ----, 2003 WL 1481583, at *5; *Brown v. Crawford*,
> 906 F.2d 667, 671 (11th Cir. 1990). The necessary causal connection can
> be established "when a history of widespread abuse puts the responsible
> supervisor on notice of the need to correct the alleged deprivation, and he
> fails to do so." *Gonzalez*, 325 F.3d at ----, 2003 WL 1481583, at *5
> (quoting *Braddy v. Fla. Dept. of Labor & Employment*, 133 F.3d 797, 802
> (11th Cir.1998)); *Brown*, 906 F.2d at 671. Alternatively, the causal
> connection may be established when a supervisor's "'custom or policy ...
> result[s] in deliberate indifference to constitutional rights'" or when facts
> support "an inference that the supervisor directed the subordinates to act
> unlawfully or knew that the subordinates would act unlawfully and failed
> to stop them from doing so." *Gonzalez*, 325 F.3d at ----, 2003 WL
> 1481583, at *5 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.
> 1991)); *Hartley*, 193 F.3d at 1263; *see also Post v. City of Ft. Lauderdale*,
> 7 F.3d 1552, 1560-61 (11th Cir. 1993). "The standard by which a
> supervisor is held liable in [his] individual capacity for the actions of a
> subordinate is extremely rigorous." *Gonzalez*, 325 F.3d at ----, 2003 WL
> 1481583, at *4 (internal quotation marks and citation omitted).

*Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  In instances where supervisory

liability is based on a supervisor's custom or policy, a plaintiff must show that the custom

or policy was "the 'moving force [behind] the constitutional violation.'"   *Pinkney v.*

*Davis*, 952 F. Supp. 1561, 1569 (M.D. Ala. 1997) (citations omitted).  "[I]t is clear that

not only must there be some degree of 'fault' on the part of [defendant] in establishing

the policy or tolerating the custom, but there must be a causal link between the custom or policy and the constitutional deprivation." *Id.* (citations omitted).

While Defendants Stewart and Myers are admittedly supervisors in charge of the segregation unit, Calhoun has failed to prove any fault or causation against them for customs or policies that link them to the alleged "attacks." First, there is no evidence that inmate Hill and Plaintiff Calhoun were known enemies prior to September 23, 2012, or that anyone, including Plaintiff foresaw, suspected, or feared an assault on Plaintiff by inmate Hill. (Doc. 35-7 at 1; Doc. 35-6 at 1). Second, the evidence is clear that following the assault, it was officially "noted" that the two inmates where not to have contact with one another and no future incidents were noted.[14] ((Doc. 35-4 at 2). Third, the record is similarly void of evidence that the wardens knew Defendant Lambert had a propensity to use excessive force against inmates or that he intended to attack Calhoun. Finally, Calhoun has failed to prove any possible allegation of deliberate indifference on the part of the defendant officers; therefore, no jury could find that the wardens, as supervisors, are liable for policies or customs which encourage attacks on inmates where no constitutional violation has been found. *Howell v. City of Lithonia*, 397 F. App'x 618, 621 (11th Cir. 2010) ("Because [the arresting officer] committed no constitutional violation, [the plaintiff] cannot show a basis on which to establish municipal liability

---

[14]    Even had the wardens been aware that inmate Hill and Calhoun were enemies, the two inmates were being held in single-man segregation cells, and according to Plaintiff, they were even housed on separate tiers. Record evidence supports that protocol was followed in the situation and the assault was merely an unfortunate accident for which the wardens cannot be held responsible. *See Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 619-20) (11th Cir. 2007) ("'[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" (quoting *Farmer*, 511 U.S. at 844-45)).

against the [c]ity or supervisory liability against [the police chief]."); *Beshers v. Harrison*, 495 F.3d 1260, 1264 n.7 (11th Cir. 2007) ("We need not address the Appellant's claims of municipal or supervisory liability since we conclude that no constitutional violation occurred." (citations omitted)). Therefore, summary judgment should be entered as to this claim.

## IV.     CONCLUSION

Plaintiff Calhoun has failed to show an Eighth Amendment constitutional violation on the part of the defendants. Based on the foregoing, the Court recommends that summary judgment should be **granted** in favor of Defendants Stewart, Myers, Lee, White, and Lambert and that Plaintiff Calhoun's action against Defendants be **dismissed** with prejudice.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in

the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 29th day of July 2015.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**